IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Kimberly Weeden, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:10-cv-644 |
| | : | |
| v. | : | Chief Judge Susan J. Dlott |
| | : | |
| Northwest Local School District Board of Education, | : | ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 13). In this case, Plaintiff Kimberly Weeden asserts age discrimination in violation of Ohio and federal law against her former employer, Defendant Northwest Local School District Board of Education ("Northwest Local"). Northwest Local denies discriminating against Weeden and has moved for summary judgment. For the reasons that follow, the Court will **DENY** the Motion for Summary Judgment.

I.      BACKGROUND

A.      Factual History

The following statement of facts is derived from Defendant's Statement of Proposed Undisputed Facts (doc. 13-1) and Plaintiff's Responses to Proposed Undisputed Facts (doc. 16-1), except where otherwise noted. Kimberly Weeden was born in 1959 and was approximately fifty years of age at the time of the events in question. (Weeden Aff. ¶ 2.)[1] She earned a bachelor's degree from the College of Mt. Saint Joseph's, a masters degree from Xavier

---

[1] The Weeden Affidavit is found in the record at Doc. 16-2.

University, and a masters degree in elementary education from the University of Cincinnati. (*Id.* ¶ 3.) She also took post-graduate degree courses in special education at the University of Cincinnati. (*Id.*) She has teaching licenses from the State of Ohio to teach elementary school and to teach special education from kindergarten through the twelfth grade. (*Id.*)

Weeden began teaching full time for Northwest Local in the 2007–2008 school year, during which year she split her time between two schools in the district, Welch Elementary and Houston Elementary. Weeden received positive written evaluations during the 2007–2008 school year from Sammie Croley, the principal of Welch Elementary.[2] Croley determined in April 2008 that Weeden had met "District Standards" in multiple categories, including:

- Designs lessons to motivate students to engage actively in the learning process;
- Teaches for application, analysis, synthesis, and evaluation;
- Incorporates factors of motivation in instruction;
- Establishes and maintains a classroom discipline plan which promotes self discipline among students and results in classes conducive to learning;
- Works cooperatively with other school and district personnel; and
- Follows written administrative policies and procedures.

(Weeden Aff. Ex. A.)

For the 2008–2009 school year, Weeden transferred to Taylor Elementary in the same district. She served as a special education teacher for the fifth grade supporting a full-inclusion math classroom and teaching the "Read 180" program. Becky Karlak was the principal at Taylor Elementary during the 2008–2009 school year. There were four other fifth-grade teachers at Taylor Elementary that school year: Richard Kathman, Kristen Knapp, Kelley Purtee, and Kirstie Flannery. (Karlak Dep. 101–02.) The other teachers were all under the age of 35 years

---

[2] Neither Weeden or Northwest Local cited to any evaluations of Weeden from Houston Elementary.

old.  (*Id.*  Ex. 4.)

Karlak met with Weeden before the school year began.  At their initial meeting, Karlak told Weeden that she had "heard through the grapevine" that Weeden had problems with other teachers at her former school.  (Karlak Dep. 47–48; Weeden Aff. ¶ 7.)  Karlak testified that, nonetheless, they would "wip[e] the slate clean" and that she "want[ed] things to go well." (Karlak Dep. 48, 62.)  When questioned, Karlak could not identify the basis for her belief that Weeden had difficulty getting along with other teachers.  (*Id.* at 50; Weeden Aff. ¶ 7.)  Karlak had not reviewed Weeden's past performance evaluations prior to meeting with her, and in fact, did not do so until this litigation.  (Karlak Dep. 51.)  Karlak had talked to Croley, Weeden's former principal, but Karlak admitted that Croley did not indicate that Weeden had problems with other teachers.  (*Id.* at 49–50.)  Weeden left this initial meeting in tears, convinced that Karlak was "bias[ed]" against her.  (Weeden Aff. ¶ 8.)

Karlak testified that collaboration among teachers within a grade level was important to her.  (Karlak Dep. 52–54.)  When collaboration among teachers had been a problem, Karlak met with the teachers and tried to establish guidelines or norms for the grade.  (*Id.*)  Karlak did not meet with the fifth-grade teachers to discuss guidelines or norms to foster collaboration during the year that Weeden taught at Taylor Elementary.  (*Id.* at 54, 56–57.)

During the 2008–2009 school year, Karlak completed four formal observations and two written evaluations of Weeden.  Karlak found in the January 2009 written evaluation that Weeden had not met "District Standards" in the following appraisal areas:

- Designs lessons to motivate students to engage actively in the learning process;
- Incorporates factors of motivation in instruction;
- Teaches for application, analysis, synthesis, and evaluation;

3

- Establishes and maintains a classroom discipline plan which promotes self discipline among students and results in classes conducive to learning;
- Works cooperatively with other school and district personnel; and
- Follows written administrative policies and procedures.

(Doc. 13-6 at 5–8.) Karlak noted similar deficiencies in Weeden's performance in the March 2009 written evaluation. (*Id.* at 27–30.) Karlak also criticized Weeden for failing to greet or acknowledge students as they entered into the classroom. (Karlak Dep. 75.)[3] Nonetheless, Karlak rated Weeden as meeting district standards in numerous other categories in the two written evaluations.

As part of the evaluations, Karlak instructed Weeden to read at least three books about teaching. (Doc. 13-6 at 3, 22, 26.) She assigned Weeden to provide her with written reports of the strategies she could incorporate into her teaching. (*Id.*) Weeden averred that she never before had been required to submit reports based on outside reading to her principal. (Weeden Aff. ¶ 12.) Karlak testified that she believed she had given out similar assignments to other teachers in the past, but she could not identify any other teacher to whom she had given reading assignments as part of an evaluation or observation. (Karlak Dep. 141–43.) Weeden averred that she completed the reading assignments given to her, a claim which Karlak does not dispute. (*Id.* at 143; Weeden Aff. ¶ 12.)

Karlak intended to recommend to the superintendent and the school board of Northwest Local that Weeden's teaching contract not be renewed for the 2009–2010 school year. Karlak's

---

[3] Northwest Local attempts to support Karlak's determination that Weeden failed to work cooperatively with other teachers by citing to purported unsworn written statements criticizing Weeden by her co-workers, Amanda Trinkle and Kelly Purtee. These statements are hearsay. However, even if the Court considers the statements, Weeden still has provided sufficient evidence of pretext to withstand the Rule 56 motion.

non-renewal recommendation was based on her observations and evaluations of Weeden. (Karlak Dep. 63.) Karlak admitted that she had not reviewed the test scores of Weeden's students. (*Id.* at 86.) Weeden believed that Karlak's recommendation not to renew her was tantamount to being terminated because she believed the school board would "rubber-stamp" Karlak's recommendation. (Weeden Aff. ¶¶ 17–18.) Weeden was not aware of any teacher recommended for non-renewal being retained by the school board. (*Id.* ¶ 18.) Weeden asked to be transferred to another school within the school district, but her request was denied. (*Id.* ¶ 17; Karlak Dep. 137–41.) Weeden met with her union representative and Greg Hester, Northwest Local's Director of Human Resources, on March 19, 2009. That same day, she chose to submit a letter of resignation, effective at the end of the school year, rather than to be non-renewed. (Weeden Aff. ¶ 19.)[4] Weeden averred that a non-renewal on her employment record would have made finding another job "amazingly difficult." (*Id.*)

Northwest Local never acted to renew or non-renew Weeden's contract for the 2009–2010 school year as would have been required by state law pursuant to Ohio Revised Code §§ 3319.11. Rather, the school board simply accepted and approved her resignation during a March 23, 2009 meeting. Northwest Local replaced Weeden at Taylor Elementary the following school year with Crystal Runck, who was less than 30 years old when she was hired. (Karlak Dep. 169, 176.)

---

[4] Defendant also asserts that Weeden, as a bargaining unit member of the Northwest Association of Educators, chose not to pursue other avenues for redress available to her including grieving the evaluations she received from Principal Karlak or grieving her claims of alleged age discrimination. (Doc. 13 at 19–20.) Defendant does not identify the relevant grievance procedures in the collective bargaining agreement nor apply the relevant provisions to the facts of this case. (*Id.*) In any event, Defendant does not argue that summary judgment should be granted on the basis that Weeden failed to exhaust administrative remedies.

During her tenure at Taylor, Karlak had recommended non-renewal for only one teacher apart from Weeden. (Karlak Dep. 63–65.) The school board adopted her recommendation not to renew the other teacher. (*Id.* at 63.) Karlak agreed that nonrenewal was a "pretty big deal," but denied knowing whether it was "devastating" for a teacher to have a non-renewal on her employment record. (*Id.* at 65.)

Weeden contrasts her experience teaching fifth grade at Taylor Elementary to that of two other fifth grade teachers, Richard Kathman and Kristen Knapp. Knapp and Kathman were rumored to have had a romantic, extramarital affair during the 2008–2009 school year. (*Id.* at 145–49, 281–83 & Ex. 17.) On April 16, 2009, Kathman and Knapp had an altercation in the school building during which Knapp threw items off of her desk and broke a glass picture frame. (*Id.*) Knapp was taken to the hospital by her husband following the incident. (*Id.* at 148 & Ex. 17.) Knapp was transferred to a different school for the remainder of the school year, but Kathman remained at Taylor Elementary. (*Id.* at 150–51.)

Knapp returned to Taylor Elementary at the start of the 2010–2011 school year after Kathman transferred to a different school. (*Id.* at 278.) Knapp was not disciplined for the incident. (*Id.* Ex. 17.) Karlak continued to believe that Knapp was a good teacher after the April 2009 altercation. (*Id.* at 280–81.) Likewise, Karlak evaluated Kathman as having met his goal of being a collaborative member of the fifth-grade team for 2008–2009 school year. (*Id.* at 276–77 & Ex. 15.)

**B.     Procedural Background**

Weeden filed this suit against Northwest Local on September 20, 2010 alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§ 621, *et seq.*, and Ohio Revised Code chapter 4112.  (Doc. 1.)  Northwest Local filed an Answer in which it denied discriminating against Weeden.  (Doc. 5.)  Northwest Local now has moved for summary judgment.  The pending motion is fully briefed and ripe for adjudication.

## II.     STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  "The court need consider only the cited materials, but it may

consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### III. ANALYSIS

Weeden alleges that Northwest Local discriminated against her on the basis of her age in violation of federal and Ohio law. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Ohio law parallels the ADEA and the Court will analyze the state and federal age discrimination claims together. *See Ercegovich v. Goodyear Tire and Rubber Co.*, 154 F.3d 344, 357–58 (6th Cir. 1998) (on claims arising under O.R.C. § 4112.14); *Whitt v. Lockheed Martin Utility Serv., Inc.*, 209 F. Supp. 2d 787, 792 (S.D. Ohio 2002) (on claims arising under O.R.C. § 4112.02.).[5]

The Court will not grant summary judgment in this case because material issues of fact remain in genuine dispute. To begin, Weeden put forward evidence on each of the elements of her prima facie case. She was over forty years of age, suffered an adverse employment action, was qualified for her teaching position at Taylor Elementary, and was replaced by a younger worker outside the protected age category. *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006) (defining elements); *Cichewicz v. UNOVA Indus. Auto. Sys., Inc.*, 92 F. App'x 215, 218 (6th Cir. 2004) (same). Northwest Local disputes only two of those elements: that Weeden was subjected to an adverse employment action and that she was qualified for the position.

---

[5] The Court is unable to discern on which provision in O.R.C. chapter 4112 Weeden bases her Ohio law claim.

As to the former element, the non-renewal of an employment contract is an adverse employment action. *See Harris v. Butler Cty., Ohio ex rel. its Sheriff's Dep't.*, 344 F. App'x 195, 199 (6th Cir. 2009). However, an employee's voluntary resignation ordinarily is not an adverse action. *See id.*; *Woodmore v. Farmington Hills Police Dep't*, No. 09-2967, 2011 WL 2144522, *4 (E.D. Mich. May 31, 2011). Nonetheless, an employee who resigns only after reasonably concluding her termination is imminent can be deemed to have suffered an adverse action. *See Harris*, 344 F. App'x at 199 (6th Cir. 2009); *Cross v. Sbarro America, Inc.*, No. 1:09-cv-275, 2011 WL 572415, at *12–15 (E.D. Tenn. Feb. 15, 2011).

Applying the standards to this case, Weeden provided sufficient evidence for a reasonable jury to conclude that she suffered an adverse employment action. Although Weeden resigned her position, she did so only after she was told that Principal Karlak would recommend non-renewal of her teaching contract to the school board. Neither party presented any evidence from the school board about its procedures or history for adopting or rejecting non-renewal recommendations. However, Karlak testified that the school board had adopted her only previous non-renewal recommendation. Weeden called the school board approval a "rubber-stamp process" and averred that she had not heard of "a non-renewal being overturned" by the school board. Also, Weeden believed that a non-renewal in her employment history would make it difficult for her to have found new employment. Northwest Local offers no evidence to challenge Weeden's assessment. Finally, Weeden's request for a job transfer was refused. A reasonable jury could conclude that Weeden's decision to resign before she was formally non-renewed constituted an adverse employment action.

As to whether Weeden was qualified for her position, Northwest Local contends she was

9

not qualified based upon Principal Karlak's evaluation of Weeden's performance. Northwest Local's analysis wrongly conflates Weeden's prima facie burden and its purported legitimate nondiscriminatory reason for the employment decision. A district court cannot consider an employer's purported nondiscriminatory reason when analyzing the employee's prima facie case. *See Wexler v. White's Fine Furniture*, 317 F.3d 564, 574 (6th Cir. 2003); *Spencer v. Nat'l City Bank*, 732 F. Supp. 2d 778, 789 (S.D. Ohio 2010). Rather, the employee only must prove that she met the objective qualifications for the position. *See Culver v. CCL Label, Inc.*, No. 10-5353, 2012 WL 75439, at *2 (6th Cir. Jan. 10, 2012). Her burden is "not onerous." *Id.* Weeden's objective qualifications for the position include her education degrees, teacher certifications, and the fact that she was hired by Northwest Local to teach full-time for the 2007–2008 and 2008–2009 school years. In sum, the Court concludes that Weeden has met her prima facie burden.

Next, Northwest Local provided a legitimate, nondiscriminatory reason for the action taken. *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 940 (6th Cir. 1987). Northwest Local contends that Principal Karlak intended to recommend Weeden for non-renewal based on her poor performance as described in the written performance evaluations. Accordingly, Weeden has the burden to establish that Northwest Local's proffered reason is a pretext for discrimination. *See Holl v. Potter*, No. 1:09-cv-618, 2011 WL 4337041, at *14 (S.D. Ohio June 6, 2011), *report and recommendations adopted by*, 2011 WL 4337038 (S.D. Ohio Sept. 15, 2011).

An employee can demonstrate pretext by showing that the employer's explanation (1) had no basis in fact, (2) did not actually motivate its action, or (3) was insufficient to

motivate its action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), *overruled on other grounds*, *Geiger v. Tower*, 579 F.3d 614, 621 (6th Cir. 2009). The Sixth Circuit has cautioned that courts should "avoid formalism" in the application of this test, "lest one lose the forest for the trees." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400, n. 4 (6th Cir. 2009). Pretext, the court observed, "is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Id.* The *Manzer* test can be distilled to one simple requirement: the plaintiff must produce sufficient evidence such that a reasonable jury could doubt the defendants' stated reasons for its actions. *Id.*

In this case, the Court is cognizant of two factors which affect the examination of the evidence of pretext. First, the evidence must be viewed in a light most favorable to Weeden. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 585–87; *Provenzano*, 663 F.3d at 811. Second, Principal Karlak's negative evaluations of Weeden were based on subjective criteria, not objective criteria like test scores. Subjective evaluations are not per se discriminatory or pretextual. *Browning v. Dep't of Army*, 436 F.3d 692, 697 (6th Cir. 2006); *Adkinson v. Procter & Gamble Co.*, No. 1:10-cv-85, 2011 WL 6371084, at *22 (S.D. Ohio Dec. 19, 2011). But subjective criteria do provide a ready pathway for discriminatory action and bear close examination. *Idemudia v. J.P. Morgan Chase*, 434 F. App'x 495, 504 (6th Cir. 2011); *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982); *Adkinson*, 2011 WL 6371084, at *22.

A reasonable jury in this case could conclude that Principal Karlak was predisposed or

biased against Weeden before Weeden began teaching at Taylor Elementary. Karlak asserted that Weeden had not gotten along with her co-workers in her previous position, but she did not have a specific basis for her assertion. Also, a reasonable jury might question Karlak's evaluation of Weeden to the extent that her subjective conclusions diverged from the conclusions reached by Weeden's supervisor the previous school year on the same criteria. Finally, a reasonable jury might doubt Karlak's assertion that Weeden did not meet her standards for collaboration with other teachers. Weeden did not meet with the fifth-grade teachers during the 2008–2009 school year to establish guidelines for collaboration as she testified she has done in the past when collaboration was a problem. Also, a reasonable jury might question why Karlak made favorable remarks about two other fifth grade teachers—teachers whose personal relationship deteriorated into a physical confrontation requiring Northwest Local to assign the teachers to separate schools—if collaboration was an important evaluation criteria. The Court concludes that Weeden has raised at least a disputed issue of material fact regarding whether Northwest Local's proffered reason for its employment decision was pretextual. This evidence of pretext, coupled with the prima facie case of age discrimination, is sufficient to allow Weeden to withstand the Rule 56 motion.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (doc. 13) is hereby **DENIED**.

IT IS SO ORDERED.

                                                 ___s/Susan J. Dlott_____
                                                 Chief Judge Susan J. Dlott
                                                 United States District Court

13